# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 23-03054-01-CR-S-MDH |
| HERNANDEZ I. HUDSON, | ) ) ) | |
| Defendant. | ) ) | |

## REPORT & RECOMMENDATIONS

Before the Court is Defendant's Motion to Suppress. (Doc. 36.) This action has been referred to the undersigned for the purpose of submitting a report on any pretrial motions to suppress evidence. As follows, it is **RECOMMENDED** that the Motion to Suppress be **DENIED**.

### I. Background

Defendant has been charged by indictment with one count of possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1) and 924(a)(8). (Doc. 1.)

In his Motion, Defendant asks the Court to suppress "all statements and evidence obtained by the government pursuant to the warrantless search conducted by members of the Springfield Police Department on March 13, 2023." (Doc. 36 at 1.) In support, Defendant claims "that such statements and evidence were obtained as the result of a warrantless search conducted without any reasonable suspicion that criminal activity was afoot; no specific or articulable fact that would justify a warrantless stop and frisk; and no probable cause to believe the Defendant had committed (or was about to commit) a crime." *Id.*

A suppression hearing was held on June 11, 2024. (Doc. 42.) Defendant appeared in person with his attorney, Benjamin Stringer, and the Government was represented by Assistant

United States Attorney Casey Clark. *Id.* Springfield Police Department (SPD) police officers, Joshua Datema, Justin Thorn, John Taylor, Trey Ferneau, Jacob Adams, and Brett Barnes appeared and testified. *Id.* The suppression hearing was continued to June 13, 2024 to allow time for Defendant to present his evidence. (Doc. 45.)

II. **Findings of Fact**

On March 9, 2023, Springfield Police Department (SPD) released an internal bulletin to all SPD officers listing Defendant as a suspect in a home burglary. (Doc. 43, Exh. 1.) The bulletin contained a description and photographs of Defendant, the numbers of two stolen license plates associated with Defendant, and a statement regarding Defendant's association with firearms. *Id.* The bulletin also contained a probable cause (PC) item for Defendant, indicating that SPD officers had probable cause to arrest him for unlawful use of a weapon, as well as listing outstanding warrants for Defendant. *Id.*; (doc. 46 at 11.)

On March 13, 2023, SPD Officer John Taylor was on patrol in a parking lot on Kearney Street, in Springfield, Greene County, Missouri. (Doc. 46 at 34–35.) Officer Taylor observed a white Ford Edge with the stolen plates provided on the bulletin pull into the parking lot of a Dollar General and park. *Id.* at 35–36. Officer Taylor then witnessed a Black male with black dreadlocks and red tips, matching Defendant's description in the bulletin, exit the vehicle from the driver's seat. *Id.* at 36, 56. Officer Taylor watched Defendant walk into Dollar General and called for backup to apprehend Defendant for an outstanding warrant and the PC item. *Id.* at 36–37. Officer Ferneau and Officer Adams arrived in response before Defendant exited the store. *Id.* at 38. When Defendant exited the store, the officers handcuffed Defendant and did a pat down, as he was known to carry weapons per the bulletin. *Id.* at 38–39, 50, 96. After initially refusing to confirm his identity, Defendant shortly thereafter confirmed he was Hernandez Hudson. *Id.* at 40.

Dispatch confirmed for the officers that Defendant had an active warrant related to Missouri Probation and Parole, and an active PC item from SPD for unlawful use of a weapon. *Id.* at 42, 75, 89. After the officers confirmed the warrants and PC item, approximately fifteen minutes after Defendant's initial detention, Defendant was arrested and with his consent, officers conducted a search of Defendant's person locating a large amount of "prop money" and two Missouri driver's licenses for other individuals that were each reported stolen. *Id.* at 40–41. Officers then turned their attention to the white Ford Edge in the parking lot that Defendant had been driving, which displayed two different license plates. *Id.* at 42, 73–74, 89–90. Officers discovered a Missouri license plate inside the vehicle, displayed in the front windshield, that was reported and confirmed stolen as well as a different Missouri license plate on the back of the vehicle that was also reported and confirmed stolen. *Id.* at 41–42, 73–74, 90. Officers found that the vehicle was not registered through the state of Missouri to Defendant. *Id.* at 84. Officers attempted to contact the individual to whom the vehicle was registered, unsuccessfully. *Id.*

Given the stolen license plate observed inside of the vehicle, the officers conducted a search of the Ford Edge for additional stolen property. *Id.* at 42, 74. During the vehicle search, the officers located a Heckler and Koch, model VP9, 9 mm pistol containing a magazine and bearing serial number 224-256666, in the front driver-side door compartment. *Id.* at 42, 75, 91–92, 96–97. The vehicle was then custody-towed pursuant to SPD policy, specifically Standard Operating Guideline (SOG) Number 405.1. *Id.* at 43, 76–77.

### III. Conclusions of Law

#### A. Officers Had Reasonable Suspicion to Stop Defendant

The Fourth Amendment protects citizens against unreasonable searches and seizures. U.S. Const. amend. IV. "Under *Terry*, an officer may, consistent with the Fourth Amendment, conduct

3

a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *United States v. Johnson*, 31 F.4th 618, 622 (8th Cir. 2022) (cleaned up); *see also Terry v. Ohio*, 392 U.S. 1, 30 (1968). Reasonable suspicion requires police officers to "be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *United States v. Allen*, 705 F.3d 367, 370 (8th Cir. 2013) (cleaned up).

In determining whether reasonable suspicion exists, courts must consider the totality of the circumstances, "taking into account an officer's deductions and rational inferences resulting from relevant training and experience." *United States v. Stokes*, 62 F.4th 1104, 1107 (8th Cir. 2023) (cleaned up). Courts must also consider "what the officer reasonably knew at the time rather than assessing the existence of reasonable suspicion with the vision of hindsight." *United States v. Slater*, 979 F.3d 626, 629 (8th Cir. 2020) (cleaned up). "[A]n officer may have reasonable suspicion to conduct a *Terry* stop based on a combination of factors even where no single factor, considered alone, would justify a stop." *Stokes*, 62 F.4th at 1107 (cleaned up).

"In developing this suspicion, officers may rely on information provided by other officers as well as any information known to the team of officers conducting the investigation." *Johnson*, 31 F.4th at 622 (cleaned up). "If a flyer or bulletin has been issued on the basis of articulable facts supporting a reasonable suspicion that the wanted person has committed an offense, then reliance on that flyer or bulletin justifies a stop to check identification, to pose questions to the person, or to detain the person briefly while attempting to obtain further information." *United States v. Smith*, 648 F.3d 654, 659 (8th Cir. 2011) (cleaned up). This applies "even if the notice omits the specific articulable facts supporting reasonable suspicion." *Id.* (cleaned up).

Officer Taylor, and the officers that responded as backup, had reasonable suspicion to believe Defendant was the individual described in the police bulletin distributed to SPD officers. Officer Taylor observed a white Ford Edge with the license plates matching the stolen license plates associated with Defendant in the SPD bulletin and observed a person matching Defendant's description and picture, as issued on the police bulletin, exit the vehicle and enter the store. Officer Taylor, and the officers that arrived as backup, knew at that time, per the bulletin, that Defendant had a PC item out on him and had active felony warrants for his arrest. The undersigned finds that the officers had reasonable suspicion to stop Defendant as he exited the store to obtain further information and confirm his identity, as it relates to the PC item and active arrest warrants, based on the totality of the circumstances.

Once the officers confirmed Defendant's identity and the active arrest warrants, they then had probable cause to arrest Defendant. The officers then conducted a search of Defendant's person incident to arrest. *See United States v. Pratt*, 355 F.3d 1119, 1121 (8th Cir. 2004) ("[I]f an officer has arrested the individual, the officer may search the individual's person incident to that arrest and may reach into his pockets."). As such, the undersigned finds that the stop, detention, arrest, and search of Defendant were all justified under the law and the facts of the situation.

B. **Officers Legally Conducted the Search of Defendant's Vehicle**

   i. **Officers had Probable Cause to Search the Vehicle**

Under the Fourth Amendment, "[s]earches conducted without a warrant are per se unreasonable, subject to a few well-established exceptions," including the "automobile exception." *United States v. Britton*, 101 F.4th 538, 541 (8th Cir. 2024) (cleaned up). The automobile exception allows officers to legally search a vehicle "without a warrant, if they have probable cause to believe that evidence of a crime or contraband will be found inside." *United States v.*

5

Case 6:23-cr-03054-MDH   Document 50   Filed 07/08/24   Page 5 of 9

*Crawford*, 93 F.4th 436, 440 (8th Cir. 2024).  "This is because a vehicle's ready mobility creates an exigency and because individuals have a reduced expectation of privacy in an automobile, owing to its pervasive regulation."  *United States v. Dunn*, 928 F.3d 688, 693 (8th Cir. 2019) (cleaned up).  However, "[t]he automobile exception may apply even when there is little to no chance that the vehicle will be moved or its contents destroyed."  *United States v. Soderman*, 983 F.3d 369, 376 (8th Cir. 2020).

Probable cause exists when, given the totality of the circumstances, a reasonable person could believe there is a fair probability that contraband or evidence of a crime will be found in a particular place."  *United States v. Beard*, 708 F.3d 1062, 1065 (8th Cir. 2013) (cleaned up).  "Probable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules."  *Crawford*, 93 F.4th at 440 (cleaned up).  In determining whether probable cause existed, courts should "consider all the facts and circumstances known by the police when they began the search, or the totality of the circumstances, and determine whether officers of reasonable caution could have inferred that the target vehicle would contain the evidence or contraband that officers sought."  *Id.* (cleaned up).  "Because probable cause is a practical and common-sensical standard, an officer may draw inferences based on his own experience to determine whether probable cause exists."  *Soderman*, 983 F.3d at 375 (cleaned up).

The undersigned finds that law enforcement had probable cause to search the vehicle for evidence of a crime.  The officers viewed stolen license plates, one inside the car on the windshield and the other on the back of the car.  "If an officer views contraband in plain sight through an automobile's window, he has probable cause to search that vehicle."  *Dunn*, 928 F.3d at 693; *see also United States v. Fladten*, 230 F.3d 1083, 1086 (8th Cir. 2000) (finding that because the

officers had probable cause to search the vehicle after seeing an item commonly used in the manufacture of methamphetamine in plain view in the back seat of the vehicle, the automobile exception allowed them to search the trunk of the vehicle and seize the contraband found there).

> **ii.   In the Alternative, the Search of the Vehicle was Legal Under the Inevitable Discovery Exception**

Even if the officers did not have probable cause to search Defendant's vehicle, the evidence is still admissible under the inevitable discovery doctrine. "Where information is discovered after police violate the Fourth Amendment, the evidence should not be suppressed if the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means." *United States v. Sallis*, 920 F.3d 577, 582–83 (8th Cir. 2019) (cleaned up). The inevitable discovery doctrine applies when the Government proves: (1) "that the evidence would have been discovered by lawful means in the absence of police misconduct"; and (2) "that the government was actively pursuing a substantial, alternative line of investigation at the time of the constitutional violation."[1]  *United States v. Baez*, 983 F.3d 1029, 1039 (8th Cir. 2020) (cleaned up).

As to the first prong, SPD's SOG Number 405.1, which was submitted into evidence at the hearing by the Government, dictates that a vehicle is subject to a "custody tow" when the driver or owner of a vehicle is arrested. *See* SOG 405.1 at II. The guidelines also state that during a custody tow, officers must complete a Tow Report, which includes an inventory section documenting property within the vehicle. *See id.* "An inventory search is reasonable and

---

[1] The Eighth Circuit acknowledges that its caselaw on the inevitable discovery doctrine has been "inconsistent." Although the Eighth Circuit has not settled on one formula for applying the doctrine, it has concluded that if the two-prong test is satisfied, then the inevitable discovery doctrine applies. *See Baez*, 983 F.3d at 1039.

constitutional if it is conducted according to standardized police procedures." *United States v. Garreau*, 658 F.3d 854, 857 (8th Cir. 2011). Furthermore, "[o]fficers performing a lawful inventory search may keep their eyes open for potentially incriminating items that they might discover in the course of an inventory search, as long as their sole purpose is not to investigate a crime." *Id.* at 858 (cleaned up). Here, Defendant was arrested, his vehicle was custody towed, and as such would have been inventory searched per SPD's guidelines. Therefore, the undersigned finds that the evidence would have been discovered pursuant to a standard inventory search per SPD's guidelines.

"The second prong requires that the government prove that there was, at the time of the [unconstitutional] search . . . an actual other investigation that would have led to discovery of the otherwise unconstitutionally obtained evidence." *United States v. Munoz*, 590 F.3d 916, 923–24 (8th Cir. 2010) (cleaned up). "In this analysis, it is important to focus not on what the officers actually did after unlawfully recovering evidence, but on what the officers were reasonably likely to have done had the unlawful recovery not occurred." *United States v. McManaman*, 673 F.3d 841, 846 (8th Cir. 2012) (cleaned up). The Eighth Circuit has treated police inventory searches as "alternative investigations," finding the inevitable discovery doctrine applies where evidence would have been discovered in the course of a lawful police inventory. *See United States v. Alvarez Gonzalez*, 319 F.3d 1070, 1072 (8th Cir.2003) (finding the inevitable discovery doctrine applied to discovery of a firearm in defendant's vehicle when the defendant's van was searched after he stopped for a traffic violation and it was discovered he was an illegal alien driving without a valid license); *United States v. Everett*, 977 F.3d 679, 683 (8th Cir. 2020) (finding that "the district court's inventory search ruling was correct and that the firearm would inevitably have been discovered through this independent line of investigation," namely a valid inventory search); *see*

*also United States v. Gonzalez*, 111 F.3d 136 (8th Cir. 1997). For the above reasons, the undersigned finds that the inevitable discovery doctrine applies here, and as such that even if the officers did not have probable cause to search Defendant's vehicle, the search was constitutionally permissible.

**IV.     Conclusion**

For the foregoing reasons, it is hereby **RECOMMENDED** that Defendant's Motion to Suppress be **DENIED**.

**IT IS SO ORDERED.**

/s/ *David P. Rush*
DAVID P. RUSH
UNITED STATES MAGISTRATE JUDGE

DATE: July 8, 2024